UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Matthew Tait,

          Plaintiff,

—v—

Accenture PLC, *et al.*,

          Defendants.

18-cv-10847 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Matthew Tait brought this action against Accenture Federal Services LLC and Accenture plc (collectively "Accenture"), alleging that Accenture has unlawfully frozen a bank account that he holds with UBS Financial Services Inc. ("UBS"). Plaintiff filed a complaint seeking injunctive relief in aid of an ongoing arbitration between the parties. Complaint ("Compl."), Dkt. No. 10. In his Complaint, Plaintiff alleges that Accenture's placement of the hold constitutes conversion and an unreasonable restraint on alienation. Dkt. No. 10. Plaintiff also moves for a preliminary injunction enjoining Accenture from freezing his account. Dkt. No. 5. For the reasons given below, Plaintiff's motion for a preliminary injunction is hereby DENIED.

**I.    Background**

The Court takes the following undisputed facts from the parties' submissions on Plaintiff's motion for a preliminary injunction. *See, e.g., Bank Midwest, N.A. v. Hypo Real Estate Capital Corp.*, No. 10-cv-232 (WHP), 2010 WL 4449366, at *6 (S.D.N.Y. Oct. 13, 2010) ("For purposes of deciding whether [the movant] is entitled to a preliminary injunction, this Court considers the declarations and exhibits submitted in connection with the motion.").

1

Plaintiff was employed by Accenture until June 9, 2018. Declaration of Matthew Tait ("Tait Declaration"), Dkt. No. 8., ¶¶ 2-19. While working at Accenture, Plaintiff entered into an employment agreement (the "Employment Agreement"), which contained stock grant agreements (the "Grant Agreement"), pursuant to which Accenture issued a number of shares of Accenture stock to Plaintiff. Tait Declaration ¶ 6. Both agreements contained non-competition and non-solicitation provisions that, *inter alia*, limited Plaintiff's ability to compete with Accenture. Tait Declaration ¶ 7. These agreements also contained provisions under which disputes arising from the agreements were to be resolved before the International Court of Arbitration of the International Chamber of Commerce ("ICC"). Compl. ¶ 5. However, these agreements also permit either party to bring an action in any court in New York to, *inter alia*, "seek[] temporary or preliminary relief in aid of an arbitration." Compl. ¶ 12.

After leaving Accenture in June of 2018, Plaintiff began working at ManTech International Corp. ("ManTech"). Tait Declaration ¶¶ 12-19. On August 31, 2018, Accenture filed a Request for Arbitration with the ICC. Compl. ¶ 6. Accenture alleged that ManTech is its competitor and that as a result, Tait had breached the restrictive covenants in the agreements. Dykens Declaration, Dkt. No. 7, Ex. 3. On the same day Accenture filed its Request for Arbitration, it also instructed UBS to impose a hold on Plaintiff's investment account with UBS ("UBS Account"), which was a brokerage account "into which Accenture transferred every grant of stock or other incentive compensation it provided to Tait." Tait Declaration ¶ 36; Compl. ¶ 7. The UBS Account also holds shares that Tait purchased with his own money pursuant to a Voluntary Equity Investment Program as well as cash proceeds from shares in Accenture. Tait Declaration ¶¶ 38-39; Defendants' Opposition ("Def. Opp."), Dkt. No. 35, at 5 n. 1. Accenture contends that Plaintiff explicitly consented to such a hold in the Grant Agreement. Plaintiff

counters that the Grant Agreement did not authorize Accenture to place such a hold, particularly in light of the fact that the UBS Account contained stocks and cash that were not given to Plaintiff under the Grant Agreement.

Plaintiff contends that this hold has caused him financial harm and lost him business opportunities. Plaintiff's Memorandum in Support of a Preliminary Injunction ("Pl. Mot."), Dkt. No. 6, at 15-17. Plaintiff further alleges that the hold was placed on his UBS Account "at the recent height of Accenture's share price" and that the hold resulted in "significant lost economic opportunity." Tait Declaration ¶¶ 42-43. In addition, Tait alleges that at the time of the hold, he and his wife "were actively looking at vacation properties for purchase as a second home" and that he had "planned to use the cash and Accenture shares in the UBS Account as part of the purchase money for the home." Tait Declaration ¶ 44. Plaintiff alleges that to this date he and his wife have not purchased a second home. Tait Declaration ¶ 44.

Plaintiff filed his motion for a preliminary injunction on November 19, 2018. Dkt. No. 5. On December 14, 2018, the parties filed a joint letter with the Court agreeing that neither discovery nor an evidentiary hearing were necessary in connection with Plaintiff's motion. Dkt. No. 31. Defendants filed an opposition to Plaintiff's motion, including exhibits, on January 11, 2019. Dkt. No. 35. Plaintiff filed his reply on February 1, 2019. Dkt. No. 36.

**II.      Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court may issue a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A party seeking a preliminary injunction must make one of two showings: First, he may "show that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of

preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest." *ACLU v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015). Alternatively, he "may show irreparable harm and either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Id.* (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)).

### III. Discussion

Defendants argue that the Court should deny Plaintiff's motion for a preliminary injunction because: (i) he has failed to show likelihood of irreparable harm, (ii) he has failed to show likelihood of success on the merits, and (iii) because this action must be arbitrated under the parties' agreements. For the reasons given below, the Court agrees that Plaintiff has failed to show a likelihood of irreparable harm, which would be necessary under either of the Second Circuit's preliminary injunction standards. As a result, it is unnecessary to reach Defendants' second and third arguments.

Showing a likelihood of irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks omitted); *see also Am. Broad. Cos. v. Aereo Inc.*, No. 1:12-cv-01540 (AJN), 2012 WL 3854042, at *24 (S.D.N.Y. July 11, 2012). Accordingly, if the moving party fails to demonstrate that such injury is likely, a court need not consider the other elements of the preliminary injunction standard. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide

4

adequate compensation." *Kamerling*, 295 F.3d at 214 (internal quotation marks omitted). In addition, the harm must be "neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted). The Court applies this standard here.

Plaintiff's claims of financial harm are insufficient to show a likelihood of irreparable harm. Plaintiff argues that he "will suffer (and has already suffered) irreparable harm in the form of continued and unjustified losses in economic and business opportunities." Pl. Mot. at 15. Accenture does not dispute that Plaintiff's Accenture stocks have lost in value since the placement of the hold. Yet Plaintiff offers no explanation for why this loss would not be remediable by money damages. As a result, Plaintiff's allegations of "monetary loss alone will not suffice to demonstrate irreparable harm." *Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC*, No. 13-cv-6562 (RJS), 2013 WL 12109397, at *7 (S.D.N.Y. Oct. 2, 2013) (citing *Haggiag v. Brown*, 728 F. Supp. 286, 291 (S.D.N.Y. 1990)); *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010) ("We have long held that an injury compensable by money damages is insufficient to establish irreparable harm." (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). Plaintiff's conclusory assertion of lost "business opportunities" is similarly insufficient. *See CapLOC, LLC v. McCord*, No. 17-cv-5788 (ATR), 2019 WL 1236415, at *2 (S.D.N.Y. Mar. 18, 2019) ("[e]ven in those unusual circumstances where monetary loss may support a finding of irreparable harm . . . conclusory assertions" are not sufficient (quoting *WestLB AG v. BAC Fla. Bank*, No. 11-cv-5398 (LTS), 2012 WL 3135825, at *5 (S.D.N.Y. Aug. 2, 2012))). Plaintiff's claims of financial harm and lost business opportunities are therefore not sufficient to show a likelihood of irreparable harm.

5

None of the cases on which Plaintiff relies are to the contrary. The cases Plaintiff cites for support are all distinguishable because they involved a qualitatively different harm from monetary loss standing alone. *See trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705, 728 (S.D.N.Y. 2017) (inability of movant to "survive as a business" constitutes irreparable harm); *Donohue v. Mangano*, 886 F. Supp. 2d 126, 154 (E.D.N.Y. 2012) (risk to employees of debts going unpaid and harm to families' health benefits can constitute irreparable harm); *Glob. Switching, Inc. v. Kasper*, No. 06-cv-0412 (CPS), 2006 WL 385315, at *3 (E.D.N.Y. Feb. 17, 2006) (the "party's loss of control of [the] business constitutes irreparable harm"); *Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.*, 908 F. Supp. 1180, 1187 (W.D.N.Y. 1995) ("foreclosure and the loss of [movant's] entire business" was irreparable harm). Plaintiff has claimed no such severe or irreparable harm here. Instead, the only concrete harm Plaintiff points to beyond financial loss itself is that he and his wife were looking to purchase a second home at the time of the freeze, he had planned to use the UBS Account as part of the purchase money for the home, and he and his wife have yet to purchase a second home. Tait Declaration ¶ 44. Yet Plaintiff never directly alleges that the freeze on his UBS account has in fact prevented him from acquiring a second home. Nor does he explain how the freeze would actually impede him from undertaking such a purchase, since the mere fact that he "planned to use the cash and Accenture shares in the UBS Account as part of the purchase money for the home," *id.*, does not mean that he would be unable to purchase such a home otherwise. This is far from sufficient to render Plaintiff's alleged financial harm irreparable.

Plaintiff's failure to show a likelihood of irreparable harm is fatal to his motion for a preliminary injunction under either of the tests provided by the Second Circuit. *See ACLU*, 785 F.3d at 825. The Court therefore denies Plaintiff's motion without reaching the parties'

arguments regarding likelihood of success on the merits, the balance of equities, or the public interest.

## IV. Conclusion

For the reasons given above, Plaintiff's motion for a preliminary injunction is hereby DENIED. This resolves docket item number 5. Furthermore, as Plaintiff's Complaint was for injunctive relief in aid of the ongoing arbitration, within two weeks of the date of this Order, Plaintiff shall show cause in writing why the Complaint should not be dismissed in light of the Court's ruling. *See* Def. Opp. at 14.

SO ORDERED.

Dated: May 13, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge